UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ANTHONY DeSANTIS,

    Plaintiff,

v.

NEW JERSEY TRANSIT, et al.,

    Defendants.

Civ. No. 14-3578 (KM)(MAH)

OPINION

The complaint in this case alleges that New Jersey Transit, a public employer, discriminated against one of its employees on the basis of age, disability, and race, and also violated that employee's First Amendment rights. The plaintiff, Anthony DeSantis, sues NJ Transit and two NJ Transit employees, Alan Wohl and Fred D'Ascoli. The defendants have filed a motion to dismiss various portions of the complaint. I will grant the motion in part in deny it in part. I will dismiss the individual defendants from all counts. I will likewise dismiss the First Amendment claim, as well as the harassment/hostile work environment claim. I will deny the motion, however, insofar as it seeks to dismiss the Title VII discrimination claim for failure to exhaust administrative remedies. I also deny defendants' request that I strike from the Complaint allegations regarding a failure to promote DeSantis in 1993, and that I strike DeSantis's demand for punitive damages.

### Background[1]

New Jersey Transit was the employer of the plaintiff, Anthony DeSantis. Defendant Fred D'Ascoli was NJ Transit's Deputy Chief Financial Officer.

---

[1] The allegations of the complaint are taken as true solely for the purposes of this motion to dismiss.

1

Defendant Alan Wohl was the Director of the Fixed Assets Department. (Compl.,[2] Background, ¶¶ 8–10).

DeSantis started his employment with NJ Transit in 1982 as a Senior Accountant. *Id.* at ¶ 13. He was promoted to Principal Accountant in 1994. *Id.* at ¶ 16. It appears that he left NJ Transit sometime after 2013. (Compl., Third Count, ¶ 44)

DeSantis suffers from epilepsy. (Compl., Background, ¶ 25) His condition caused him to experience seizures, some of which occurred while he was at work. Seizures were witnessed by his colleagues, including defendants D'Ascoli and Wohl. (Compl., Background, ¶ 27, Second Count, ¶ 26) DeSantis also suffers from "paralysis of his left arm" and "walks with a limp." (Compl., Background, ¶ 25)

The Complaint alleges that DeSantis is over the age of forty years old. (Compl., First Count, ¶ 3) It does not, however, give his exact age, nor does it disclose when he turned forty. As a result, the Complaint does not reveal how old DeSantis was at the time the various incidents he alleges occurred.

DeSantis also states that he is married to an African American woman, a fact relevant to his discrimination claim. (Compl., Fourth Count, ¶ 49)

DeSantis alleges that on two occasions, he sought promotion to the position of Manager of Fixed Assets. He alleges that he was the "most qualified" for the position, but that on both occasions it was given to someone else. (Compl., First Count, ¶ 11)

---

[2] Citations to the record will be abbreviated as follows:

"Charge" – Notice of Charge of Discrimination, Dkt No. 7-3, Exh. B.

"Compl." – Complaint and Jury Demand, Dkt. No. 1.

"EEOC Letter" – Dismissal and Notice of Rights, Dkt. No. 7-3, Exh. C.

"Mot." – Brief in Support of Defendants New Jersey Transit, Alan Wohl and Fred D'Ascoli's Partial Motion to Dismiss in Lieu of Answer, Dkt. No. 7-1.

"Opp." – Brief In Support of the Opposition to Partial Motion to Dismiss, Dkt. No. 11-1.

In 1993, DeSantis alleges, he was already "quite proficient" in performing the work required of the Manager of Fixed Assets, and was "relied upon by other departments to provide the necessary information from his department that they required." (Compl., First Count, ¶ 9) Nonetheless, DeSantis "was told by management that he could not apply for the position." *Id.* at ¶ 14. DeSantis provided training to Rupak Biswas, the accountant ultimately chosen for the position in 1993. (Compl., Background, ¶ 8)

Some twenty years later, in 2013, the position of Manager of Fixed Assets became available again. DeSantis says that at this time, he remained qualified for the position. DeSantis interviewed for the position, but was not promoted. (Compl., Background, ¶ 23) NJ Transit instead filled the position with an accountant from its auditing department, Fabia Cattan. DeSantis alleges that Cattan was less qualified than he was: she had "no expertise to work in the Fixed Assets Department," she "had been given the interview questions prior to the interview taking place," and she ultimately required training from DeSantis to fill the position. *Id.* at ¶¶ 21-24.

Starting during Biswas's tenure, and continuing through Cattan's tenure, DeSantis regularly performed the work that should have been performed by the Manager of Fixed Assets. (Compl., Background, ¶¶ 18, 24)

DeSantis alleges that his employer subjected him to various forms of harassment: he was "expected" to complete both his own work and the work of the manager of fixed assets (Compl., Background, ¶ 24; Third Count, ¶ 45); he was unjustly disciplined for insubordination (Compl., Third Count, ¶ 40); he was "questioned about all aspects of his work" (*Id.* at ¶ 45); and he was subjected to "hostility from Defendants" (*Id.*).

On one occasion, while training Cattan for her position, DeSantis asked Cattan to explain how she was more qualified for the position than he was. (Compl., Fifth Count, ¶ 60) Cattan "wrote [DeSantis] up" for insubordination. *Id.* at ¶ 61.

This harassment, DeSantis explains, had a negative effect on him. He experienced stress and depression (Compl., Third Count ¶¶ 35, 43), and his seizures grew more frequent. *Id.* at ¶ 36. His "health worsened which resulted in Plaintiff being taken out of work by his physician to address his worsening Epilepsy." *Id.* at ¶ 44.

DeSantis has brought suit in this Court alleging discrimination and violation of the First Amendment. The complaint consists of five counts: the First Count alleges that the defendants violated the Age Discrimination in Employment Act ("ADEA"). The Second Count alleges that the defendants violated the Americans with Disabilities Act ("ADA") and the New Jersey Law Against Discrimination ("NJLAD"). The Third Count alleges harassment and hostile work environment claims under the NJLAD. The Fourth Count alleges race discrimination (stemming from DeSantis's marriage to an African American) in violation of Title VII of the Civil Rights Act and the NJLAD. Finally, the Fifth Count alleges First Amendment violations stemming from Cattan's disciplining of DeSantis for insubordination.

The defendants have filed a motion to dismiss several portions of the complaint.

First, they argue that the individual defendants should be dismissed from all counts. With respect to the federal law claims in counts one, two, and four, defendants contend that ADEA, ADA, and Title VII do not provide for individual liability. (Mot., 48, 17-20) With respect to counts three and four (harassment/hostile work environment and race discrimination under the NJLAD) they contend that DeSantis's allegations do not state a claim against the individual defendants. *Id.* at 8, 17-20.

Second, defendants argue that the Third Count (alleging harassment/hostile work environment under the NJLAD) should be dismissed in its entirety for failure to state a claim. (Mot., 8-14).

Third, defendants contend that the Fourth Count (alleging Title VII claims of race discrimination) should be dismissed because plaintiff failed to file an EEOC administrative claim of racial discrimination. (Mot., 14-17)

4

Fourth, defendants contend that the Fifth Count (First Amendment Violations) should be dismissed because DeSantis's speech did not involve a matter of public concern, and therefore was not protected by the First Amendment. (Mot., 20-24)

Fifth, the defendants request that any mention of alleged failure to promote DeSantis in 1993 be struck from the complaint. (Mot., 24-27)

Sixth, they ask that the Court hold that punitive damages will not be available in this case. (Mot., 27-33)

I will grant the Defendants' motion in part in deny it in part. I will dismiss the individual defendants from all counts. I will likewise dismiss the harassment claim (Third Count) and the First Amendment claim (Fifth Count). I will not, however, dismiss the Title VII claim (Fourth Count) for failure to exhaust administrative remedies. I will not strike the allegations of the Complaint that describe the 1993 failure to promote. Nor will I rule, at this juncture, that punitive damages will not be available. All dismissals will be without prejudice to the filing of an amended complaint within 21 days of the date of the accompanying Order.

**Discussion**

**I.    Grounds for Dismissal Applicable Only to Individual Defendants**

Wohl and D'Ascoli argue that they should be dismissed from First, Second, Third, and Fourth Counts because individual liability is ruled out as a matter of law or has not been pled sufficiently.

*a. Individual liability under the ADA, the ADEA, and Title VII*

I deal first with the federal-law claims asserted in the First, Second, and Fourth Counts. Wohl and D'Ascoli correctly contend that Title VII, ADA, and ADEA do not impose liability on individuals who are not themselves employers.

With respect to violations of Title VII, the Third Circuit has long held that individuals cannot be personally liable. For example, in *Emerson v. Thiel College*, 296 F.3d 184 (3d Cir. 2002), a former student brought suit under Title VII against a college, its president, its vice president of academic affairs, and members of the faculty and staff. The Third Circuit upheld dismissal of the claim against the individual defendants because "individual employees are not liable under Title VII." *Id.* at 190. *See also Dici v. Com. of Pa.*, 91 F.3d 542, 552 (3d Cir. 1996) ("individual employees cannot be held liable under Title VII"); *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) ("we are persuaded that Congress did not intend to hold individual employees liable under Title VII"). As to Title VII, then, the law is clear. Count Four, the Title VII claim, must be dismissed as against Wohl and D'Ascoli, because they are not employers but individuals.

Does the same reasoning apply to ADEA and ADA? I briefly examine the state of Third Circuit precedent and discuss the statutes' parallel construction, from which I conclude that it does.

With respect to the ADEA, the Third Circuit has held in non-precedential opinions that individual defendants are not liable. *Hill v. Borough of Kutztown*, 455 F.3d 225, 246 (3d Cir. 2006) ("Hill did not bring an ADEA claim against Mayor Marino himself, nor could he have because the ADEA does not provide for individual liability."); *Parikh v. UPS*, 491 F. App'x 303, 308 (3d Cir. 2012) ("Neither Title VII nor the ADEA provides for individual liability."). Based on that guidance, I have previously held that ADEA does not provide for individual liability. *Mann v. Estate of Meyers*, No. 11-cv-1679, 2014 WL 6629667, at *14 (D.N.J. Nov. 21, 2014).

With respect to the ADA, the Third Circuit has held that individual defendants are not liable for violations of Title III, which prohibits discrimination in places of public accommodation. *Emerson*, 296 F.3d at 188. However, the Third Circuit has not addressed the issue with respect to Titles I and II of the ADA, which prohibit discrimination by employers.

6

The Third Circuit precedent as to ADA and ADEA, then, is not quite ironclad, but it is highly suggestive. I believe that the Third Circuit, squarely presented with the question, would extend its Title VII holdings to the ADEA and the ADA.

In deciding whether individuals are liable (and for other issues as well), the courts have generally treated these three statutes interchangeably. *See Dejoy v. Comcast Cable Communications Inc.*, 941 F. Supp. 468, 474 (1996) (D.N.J. 1996) ("Courts, including the Third Circuit, routinely use the case law under the three statutes interchangeably") (citing *DiBiase v. SmithKline Beecham Corp.*, 48 F.3d 719, 724 (3d Cir. 1995)); *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1280 (7th Cir. 1995); *Kohn v. AT&T Corp*, 58 F. Supp. 2d 393 (D. N.J. 1999). And that parallel construction makes sense. All three Acts are aimed at discrimination. In all three Acts, Congress created liability for "employers." *See* 29 U.S.C. § 623(a) (ADEA) ("It shall be unlawful for an *employer...*") (emphasis added); 42 U.S.C. § 1211(2) (defining "covered entity" which is prohibited from discriminating as "an employer, employment agency, labor organization, or joint labor-management committee"); 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer....").

All three statutes, moreover, narrow the scope of covered employers: to employers with more than twenty employees (in the case of the ADEA and the ADA), or those with more than fifteen employees (in the case of Title VII). *See* 29 U.S.C. § 630(b); 42 U.S.C. § 1211(5)(A); 42 U.S.C. § 2000e(b). Courts have interpreted those limitations to mean that Congress was reluctant to burden small businesses with the costs of litigating discrimination claims. Given that concern, it seems unlikely that Congress would wish to saddle individual persons with those same costs. *See Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993) ("If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.").

To be sure, as the cases concede, "employer" is defined to include not only the employer but its agents, who may be individual persons. *See* 29 U.S.C. § 630(b)(1) ("The term ["employer"] also means (1) any agent of such a person"); 42 U.S.C. § 12111(5)(A) ("The term 'employer' means...and any agent of such person."). But the inclusion of agents in the definition of employer was probably meant only to create *respondeat superior* liability, not to subject the agents themselves to personal liability. *See AIC Sec. Investigations*, 55 F.3d at 1281; *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994); *Miller*, 991 F.2d at 587. Those cases have therefore held that individuals who do not otherwise meet the definition of an "employer" may not be held liable under the ADEA or the ADA.

I find that the Third Circuit's Title VII holdings most naturally extend to the ADA and ADEA, and that individual liability is equally barred under all three statutes. Several courts in this district have reached the same conclusion. *DeJoy*, 941 F. Supp. at 475 (finding that neither the ADEA nor the ADA provides for individual liability); *Kohn v. AT & T Corp.*, 58 F. Supp. 2d 393, 421 (D.N.J. 1999); *Crawford v. W. Jersey Health Sys. (Voorhees Div.)*, 847 F. Supp. 1232, 1237 (D.N.J. 1994) (no individual liability under the ADEA); *P.N. v. Greco*, 282 F. Supp. 2d 221, 243 (D.N.J. 2003).[3] Courts of Appeals other than the Third Circuit have likewise held that individuals are not personally liable under the ADA and the ADEA. *AIC Sec. Investigations*, 55 F.3d at 1279 (no individual liability under the ADA); *Roman-Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 51 (1st Cir. 2011) (same); *Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007) (same); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 588 (9th Cir. 1993) (no individual liability under the ADEA); *Smith v. Lomax*, 45 F.3d 402, 403–04 & n. 4 (11th Cir.1995) (same); *Birkbeck*, 30 F.3d at 510-11

---

3   At least one court in this district reached the opposite conclusion, but did so without the benefit of the Third Circuit's decisions holding that Title VII did not provide for individual liability. *See Bishop v. Okidata, Inc.*, 864 F.Supp. 416, 424 (D.N.J. 1994).

(same); *Martin v. Chem. Bank*, 129 F.3d 114 (2d Cir. 1997) (same). Those authorities are numerous and weighty, and I will not depart from them.

Therefore, the First, Second, and Fourth counts of the complaint will be dismissed insofar as they assert claims against defendants Wohl and D'Ascoli for violations of the ADA, the ADEA, and Title VII.

### b. *Individual Liability under the NJLAD*

Again confining my attention to the individual defendants, Wohl and D'Ascoli, I turn to the Third and Fourth Counts, which assert parallel state-law claims under the NJLAD. Unlike federal law, NJLAD does impose individual liability, albeit through the awkward route of "aiding and abetting." NJLAD makes it unlawful for "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act." N.J. STAT. ANN. § 10:5-12 (e). New Jersey courts have held that an individual can aid and abet, not only the conduct of another person, but that person's own conduct. That implies the availability of personal liability for a violation of the NJLAD. *See Cicchetti v. Morris Cnty. Sheriff's Office*, 947 A.2d 626, 645 (2008) ("individual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can...arise through the 'aiding and abetting' mechanism.").

To hold an employee liable as an aider and abettor, Plaintiff must show: (1) the employer whom the defendant aided performed a wrongful act causing an injury; (2) the defendant was generally aware of his role as part of an overall illegal or tortious activity at the time that he provided the assistance; and (3) the defendant knowingly and substantially assisted the principal violation. *Cicchetti*, 947 A.2d at 645 (citing *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999)).

The Third Count of the complaint does not allege facts giving rise to an inference that any of those three factors are present. There is no allegation as to each individual defendant's role in the alleged discrimination. There is no allegation that the individual defendants themselves discriminated against

9

DeSantis, that they assisted in the alleged discrimination, or that they knew they were playing such a role. The complaint does not allege that Wohl and D'Ascoli played any role in the decision not to promote DeSantis to Manager of Fixed Assets; that they played any role in directing him to perform the *de facto* role of Manager of Fixed Assets; or that they played any role in disciplining him for his comments to Cattan.

Indeed, the Complaint hardly mentions the individual defendants: it specifies their job titles at NJ Transit (Compl., Parties, ¶¶ 9-10); states that Fabia Cattan is married to a friend of Wohl (Compl., Background, ¶ 22); states that Wohl and D'Ascoli were aware of DeSantis's disabilities and witnessed his seizures (*Id.* at ¶¶ 25, 27); and alleges that Wohl asked DeSantis to train Cattan (Compl., Second Count, ¶ 25). Those threadbare assertions do not make out even a minimally plausible claim that Wohl or D'Ascoli aided and abetted any discrimination against DeSantis.

Wohl and D'Ascoli will therefore be dismissed from the NJLAD claims in the Third and Fourth Counts.

## II. Title VII claim of Race Discrimination – Failure to Exhaust Administrative Remedies

The Fourth Count alleges that NJ Transit (and the individual defendants, already dismissed) mistreated DeSantis because he is married to an African American. He asserts claims of discrimination under Title VII of the Civil Rights Act and the NJLAD.[4]

---

[4] Although neither party has raised the issue, I note that several courts of appeals and courts in this district have recognize a claim under Title VII for "discrimination by association." That term refers to the act of discriminating against an employee because of the employee's close relationship with a person of another race. For example, discriminating against an employee because he is married to an African American has been held to be a violation of Title VII. *See, e.g., Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir. 1986) (so holding and citing several EEOC decisions interpreting Title VII the same way). Courts have likewise recognized claims where an employee was discriminated against because he had a biracial child, and where a student had dated an African American. *Tetro v. Elliott Popham Pontiac, Oldsmobile,*

10

The defendants argue that DeSantis's claim of race discrimination under Title VII should be dismissed for failure to exhaust administrative remedies.[5] DeSantis, they argue, did not allege race discrimination in his complaint to the EEOC. Therefore, he cannot raise a Title VII claim for race discrimination before this Court.

Defendants are correct that to bring a Title VII claim of race discrimination in a district court, the plaintiff must first file a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e)(2). The complaint alleges that DeSantis has fulfilled this requirement. His complaint states that he "has timely filed and complied with his conditions precedent to filing a Title Seven claim with the Equal Opportunity Employment Commission (EEOC). The EEOC issued a right to sue letter on March 6, 2014." (Compl., 6)

Such an allegation—which may, of course, be proved false—would ordinarily be enough to survive a motion to dismiss on the issue of exhaustion of administrative remedies. The defendants, however, present documentation which they say refutes DeSantis's assertions. Attached to their motion is a copy of DeSantis's charge of discrimination (*i.e.*, the complaint that he filed with the EEOC). The form appears to allege only disability discrimination and age discrimination. (Charge, 1-2) It does not appear to allege race discrimination. DeSantis does not check the box in the two places on the form that allow the claimant to claim "race discrimination." In his written description of the discrimination he experienced, DeSantis likewise does not mention race discrimination. *Id.*

---

*Buick, & GMC Trucks, Inc.*, 173 F.3d 988, 994 (6th Cir. 1999); *Fiedler v. Marumsco Christian Sch.*, 631 F.2d 1144, 1150 (4th Cir. 1980); *Swick v. United Parcel Serv., Inc.*, No. 02-cv-3254, 2005 WL 1793723, at *6 (D.N.J. July 26, 2005).

[5] Actually, the defendants frame their argument as one of failure to bring a *timely* EEOC claim within either 180 or 300 days of the alleged act of racial discrimination. (Mot., 14) The sense of the argument, however, is not that a racial discrimination claim was brought late; it is that the claim was not brought at all. The evident intent is to establish that plaintiff's default cannot now be remedied. For the sake of simplicity, I will characterize defendant's argument as one of failure to exhaust administrative remedies.

11

I will not consider this document at the motion to dismiss stage. Rule 12(b)(6) itself provides that in deciding a motion to dismiss, the courts are confined to the allegations of complaint. That is, a court should not consider documents other than the complaint itself and any documents attached to it. FED. R. CIV P. 12(b). However, the Third Circuit recognizes an exception to this general rule. Where a document is either "integral to or explicitly relied upon in the complaint," a court may consider the document in ruling on a motion to dismiss. *In re Rockefeller Ctr. Properties, Inc. Securitites Litig.*, 184 F.3d 280, 287 (3d Cir. 1999).

DeSantis's complaint refers to the EEOC right to sue letter, but does not explicitly refer to the EEOC charge of discrimination. (*See* Compl., ¶ 6 ( "The EEOC issued a right to sue letter on March 6, 2014.")). And the right to sue letter is not specific; it states only that the EEOC's investigation failed to establish a violation of "the statutes." (EEOC Letter, 1)

Is the EEOC charge of discrimination, though unmentioned, nevertheless integral to the Complaint? I am wary of permitting a plaintiff to skirt a motion to dismiss simply by omitting any mention of a fatal document. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). In all caution, however, I will follow the general rule of not considering documents extraneous to the Complaint. To be sure, that DeSantis *somehow* raised the issue of race discrimination with the EEOC is essential to his complaint. But that issue is not necessarily limited to whether a box was checked on a form. Rather, the test is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising out of it. *Antol*, 82 F.3d at 1295. For instance, where an EEOC charge had alleged retaliation, and the complaint in district court went one step further and alleged retaliatory firing, the new claim was not barred because the core grievances in the suit filed and the earlier EEOC complaint were the same—retaliation. *Id.* (citing *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)).

The motion to dismiss the Title VII race discrimination claim for failure to exhaust administrative remedies is therefore denied. If the plaintiff lacks any further evidence on this issue, he might consider dropping this component of his claims. Or the Magistrate Judge supervising discovery may, at his option, permit focused discovery on this issue, which might quickly set it up for summary judgment one way or the other. I will not, however, dismiss it at this early stage.

### III. NJLAD claim of harassment/hostile work environment

The Third Count of the Complaint alleges harassment and creation of a hostile work environment in violation of NJLAD. The Complaint cites the following alleged instances of harassment:

- DeSantis was disciplined for insubordination, which he says he did not deserve. (Compl., Third Count, ¶ 40)
- He was asked to complete assignments for which he should not have been responsible. *Id.* at ¶ 45
- He was "questioned about all aspects" of his work. *Id.*
- He was subjected to "hostility from Defendants." *Id.*
- He "ha[d] to complete both his work and the work of the Manager of Fixed Assets." *Id.*
- He experienced "hostility" from the defendants. *Id.*

DeSantis also describes the effect that this alleged harassment had on him. He says that he was "subjected to increased stress." (Compl., Third Count ¶¶ 35, 43); that he "experienced an increase in seizures, many of the seizures occurring on the job" (*Id.* at ¶ 36); and that he "became depressed." (*Id.* at ¶ 43) He also alleges that his "health worsened which resulted in Plaintiff being taken out of work by his physician to address his worsening Epilepsy." (*Id.* at ¶ 44)

To establish a NJLAD claim of hostile work environment based on, for example, race, a plaintiff must allege four elements: the defendant's conduct "(1) would not have occurred but for the employee's [race]; and [the conduct] was (2) severe or pervasive enough to make a (3) reasonable [African American]

13

believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (quoting *Taylor v. Metzger*, 152 N.J. 490, 706 A.2d 685, 688–89 (1998); [bracketed] material in *Caver*). Here, DeSantis's complaint fails to allege facts that give rise to a reasonable inference that the defendants' conduct would not have occurred but for DeSantis's protected status.

DeSantis's complaint does not contain any clear allegation that his employer would not have engaged in the alleged harassing conduct but for his age, disability, or interracial marital status. *See Matteo v. Bumble Bee Foods, LLC*, No. CIV. 14-435, 2014 WL 4094281, at *5 (D.N.J. Aug. 18, 2014) (dismissing a claim where the plaintiff had not alleged that her employer's conduct would not have occurred but for her disability, and had not alleged that the plaintiff's hostile work environment claim was premised on her alleged disability). I nevertheless consider whether such a but-for connection could be inferred from the facts that are alleged.

Sometimes, the but-for causation element may be established by the nature of the harassment itself. An allegation of sexual harassment, for example, may be found adequate where it is based on harassing conduct that is itself sexual in nature. *See Lehmann v. Toys R Us, Inc.*, 626 A.2d 445, 454 (N.J. 1993) ("When the harassing conduct is sexual or sexist in nature, the but-for element will automatically be satisfied."). Or an allegation of racial harassment may be found adequate where it is based on racist, or at least racial, comments or epithets. *Watkins v. Nabisco Biscuit Co.*, 224 F. Supp. 2d 852, 865 (D.N.J. 2002) ("Obviously, where conduct is clearly racial or racist in nature, the causal element will be satisfied."). But DeSantis's is not an allegation of that kind. His six enumerated acts of harassment are examples of workplace unfairness that do not have any inherent connection to age, race, or disability. Of course it is possible that an employer could express its discriminatory animus by virtually any means. But unless those means

themselves have a discriminatory tinge, further facts are needed to establish the but-for causation element.

Sometimes, the but-for causation element may be established by temporal proximity—for example, protected conduct that is closely followed by an adverse action. *E.g., Estabrook v. Safety & Ecology Corp.*, 556 F. App'x 152, 156 (3d Cir. 2014) ("In determining whether a plaintiff has produced prima facie evidence of causation, courts "have generally focused on two indicia: timing and evidence of ongoing antagonism."); *Rogers v. Alternative Res. Corp.*, 440 F. Supp. 2d 366, 376 (D.N.J. 2006) ("Temporal proximity between the protected activity and the adverse employment action can be circumstantial evidence of causation"); *see also Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (under Title VII, to raise an inference of discrimination on its own, temporal proximity must be "very close"). But again, DeSantis's allegations are not of that kind. He gives no indication that the reasons for harassing him (his age, his marital status, and his disability) manifested themselves shortly before the acts of harassment occurred.

To survive a motion to dismiss, DeSantis would have to supplement his bare accusation with additional facts that would allow the reader to conclude that the employer's actions, however unfair, were taken for *discriminatory* reasons. Without such allegations, the Third Count does not properly state a claim of harassment/hostile work environment. The Third Count will therefore be dismissed.

### IV.   First Amendment claim

The Fifth Count of the Complaint alleges that defendants violated DeSantis's First Amendment rights by disciplining him based on his comments to another employee. Because the comments did not relate to a matter of public concern, they do not give rise to a First Amendment claim against a public employer.

DeSantis allegedly had a conversation with Cattan in which he "discussed his qualifications and hers." (Compl. ¶ 31) While allegedly "providing training to Cattan," DeSantis "asked her how she was more qualified than he for the position of Manager of Fixed Assets." (Compl., Fifth Count, ¶ 60; *see also* Compl., Third Count, ¶ 37 ("Plaintiff spoke with Cattan at one point when he was providing some training and simply asked how she was more qualified for the job than he.")) Cattan allegedly responded by disciplining DeSantis. (Compl., Fifth Count, ¶ 61) The discipline seems to have consisted of a written reprimand. *Id.* ("Cattan then engaged in taking disciplinary action against Plaintiff and wrote him up."); Compl., Third Count, ¶ 40 ("Cattan took disciplinary action against Plaintiff and gave him a written warning.")). Cattan's retaliation for DeSantis's comments allegedly violated First Amendment rights.

A public employee who believes her employer has retaliated against her for exercising her First Amendment rights may bring a retaliation claim pursuant to 42 U.S.C. § 1983. *Fogarty v. Boles*, 121 F.3d 886, 888 (3d Cir. 1997). A threshold question, however, must be answered. To determine whether there is a potential First Amendment violation, the court must decide whether the public employee's speech related to a matter of public concern. "When an adverse employment action is taken against a public employee due to the employee's speech, the threshold question is whether the employee's speech can be fairly considered as relating to any matter of political, social, or other concern to the community." *Swartzwelder v. McNeilly*, 297 F.3d 228, 235 (3d Cir. 2002) citing *Connick v. Myers*, 461 U.S. 138, 146 (1983); *Watters v. City of Philadelphia*, 55 F.3d 886, 892 (3d Cir. 1995) ("The threshold issue is whether [the plaintiff]'s speech was on a matter of public concern.").

The question of whether speech involves a matter of public concern is one of law, not fact. *Connick*, 461 U.S. at 148 n. 7; *Watters*, 55 F.3d at 892. A court must consider the "content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. A matter is of public concern where it can be "fairly considered as relating to any matter of

political, social, or other concern to the community." *Watters*, 55 F.3d at 892. Speech of public concern must be distinguished from speech "that is upon matters of only personal interest for which, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* (internal citations and quotations omitted).

To illustrate, in *Connick v. Myers*, the plaintiff, a prosecutor in a district attorney's office, was informed he would be transferred to a different section of the criminal court. 461 U.S. at 140. Myers expressed opposition to the transfer to several of her supervisors. She then circulated a questionnaire to her colleagues inquiring about the office's transfer policy, general morale, the need for a grievance committee, and the level of confidence in supervisors. *Id.* at 141. Shortly thereafter, Myers was terminated. Myers alleged that the termination violated his First Amendment rights. *Id.* at 142. The Supreme Court, though, held that Myers' questionnaire involved matters of private, not public, concern. Even subjects that might in other contexts be matters of public concern, like office morale and confidence in supervisors, were, in this context, "mere extensions of Myers' dispute over her transfer to another section of the criminal court." *Id.* at 148. Myers, the Court explained, "did not seek to inform the public that the District Attorney's office was not discharging its governmental responsibilities in the investigation and prosecution of criminal cases." *Id.* Rather, "the focus of Myers' questions is…to gather ammunition for another round of controversy with her superiors. These questions reflect one employee's dissatisfaction with a transfer and an attempt to turn that dispute into a cause célèbre." *Id.*

The *Connick* Court did not entirely rule out the theoretical possibility that an employee's speech about private matters could merit First Amendment protection. *Id.* at 147. But in the context of public-employment-related grievances, it came close:

> We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Id.*

Measured against the standards of *Connick*, DeSantis's statement was one of personal, not public concern. DeSantis did not state that Cattan was unqualified for her position; he questioned whether she was more qualified than he was. (*See* Compl., Fifth Count, ¶ 60 (DeSantis "asked her how she was more qualified than he for the position of Manager of Fixed Assets."); Compl., Third Count, ¶ 37 (DeSantis "asked how she was more qualified for the job than he.")). Whether a public official is qualified for her job might, in some contexts, be a matter of public concern. Whether an official is more qualified than the speaker, however, is primarily a matter of personal interest.

DeSantis's comments can be said to touch upon matters of public concern only in the "most limited sense," found inadequate in *Connick*, 461 U.S. at 154. Theoretically, the public has a general interest in workplace fairness or in knowing that its tax dollars are being paid to the most qualified candidate. But there is nothing in the complaint to suggest that DeSantis sought to inform the public, or indeed had any civic motive. If DeSantis's comments were protected, then virtually any expression of dissatisfaction by a public employee might raise a constitutional issue. That would contravene the core rationale of *Connick*, which sought to avoid constitutionalizing issues of internal office governance:

> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official— would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not

18

> require a public office to be run as a roundtable for employee complaints over internal office affairs.

*Id.* at 149.

Because DeSantis's comments were not of public concern, they cannot furnish the foundation of a First Amendment claim, as a matter of law. The Fifth Count of the complaint will therefore be dismissed.

### V.  Motion to strike 1993 allegations

The defendants have asked the Court to strike "any portion of the Complaint pertaining to allegations of discriminatory employment actions or failure to hire from 1993, as such claims are time-barred and outside the statute of limitations for ADA, ADEA, Title VII, and NJLAD." (Motion, 24-25) Defendants have presented this request as a "motion to strike." Although Federal Rule of Civil Procedure 12(f) does permit motions to strike portions of a pleading, such motions are disfavored. *See Gray v. BMW of N. Am., LLC*, No. 13-cv-3417, 2014 WL 2208131 (D.N.J. May 28, 2014) ("[M]otions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties."). Here, even if the 1993 incident is time-barred (a question I do not reach), it might still be relevant to the claim that the employer's failure to promote DeSantis in 2013 was discriminatory. Therefore, striking any mention of the 1993 incident from the complaint is not warranted.

### VI.  Motion to deny punitive damages

Finally, the defendants argue that punitive damages should not be available in this case. (Motion, 27-33) Their contention that there is "no evidence" to support a demand for punitive damages is premature at the motion to dismiss phase. I will not at this early stage speculate as to what types of damages, if any, DeSantis might ultimately be entitled to. I will therefore deny this portion of the defendants' motion.

**Conclusion**

The Defendants' motion to dismiss will be granted in part and denied in part. Each dismissal will be without prejudice to the filing of an amended complaint within 21 days after the date of this opinion and the accompanying order. The claims that remain intact are the First, Second, and Fourth Counts, as against defendant New Jersey Transit only. An order will issue separately.

Dated April 29, 2015
Newark, New Jersey

_____
KEVIN MCNULTY
United States District Judge