UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY DeSANTIS,<br><br>Plaintiff,<br><br>v.<br><br>NEW JERSEY TRANSIT, ALAN WOHL, FRED D'ASCOLI,<br><br>Defendants. | Civ. No. 14-3578 (KM)(MAH)<br><br>OPINION |

**MCNULTY, U.S.D.J.:**

The plaintiff, Anthony DeSantis, has sued his former employer, New Jersey Transit, as well as two of its employees, Alan Wohl and Fred D'Ascoli, alleging discrimination on the basis of age, disability, and race. DeSantis alleges that NJ Transit violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a); the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000; and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12. He also argues that Alan Wohl and Fred D'Ascoli are liable under the NJLAD for "aiding and abetting" NJ Transit's discrimination. Defendants have filed a motion for summary judgment.

### I. BACKGROUND

#### A. Facts

Anthony DeSantis started working for NJ Transit on December 13, 1982, as a Senior Accountant in the Fixed Assets Department. (DeSantis Stmt.

1

¶ 1-2).[1] DeSantis has suffered with epilepsy for several years, has paralysis of his left arm, and walks with a limp. (DeSantis Stmt. ¶ 19). His supervisor, Alan Wohl, was aware that DeSantis had paralysis of the left arm and a limp. (Wohl Dep. Tr. 46:18–47:9). Wohl claims that he was unaware DeSantis suffered from epilepsy. (*Id.*).

DeSantis claims that the Manager of Fixed Assets position became available in 1993, but he was told he could not apply for the position. (DeSantis Stmt. ¶ 3). Rupak Biswas was hired as the Manager of Fixed Assets. (DeSantis Stmt. ¶ 5). DeSantis claims that Biswas was not experienced and that he often had to do Biswas's work. (DeSantis Stmt. ¶ 6). DeSantis was later promoted to the position of Principal Accountant in Fixed Assets in 1994. (DeSantis Stmt. ¶ 4). DeSantis reports that Alan Wohl told him at one meeting in 2011, "just remember that shit rolls down the hill and you are going to always be at the bottom." (Compl. ¶ 106).

When Biswas notified NJ Transit that he was going to retire, four employees met the specific requirements for the position and were invited to interview in 2013. (DeSantis Stmt. ¶ 8-9); (NJT Stmt. ¶ 14). Those employees were DeSantis, Fariba Cattan, Mr. Trinca, and Mr. Omoyi. (NJT Stmt. ¶ 15). They were 60, 54, 48, and 50 years old, respectively. (NJT Stmt. ¶ 15). The

---

[1]  Citations to the record are abbreviated as follows:

Compl. = Complaint (ECF no. 1)

AC = Amended Complaint (ECF no. 20)

NJT Stmt. = Defendants' Statement of Material Facts (ECF no. 45)

Interview Rankings = Interview Rankings from NJ Transit (ECF no. 53-9)

DeSantis Stmt. = Plaintiff's Statement of Material Facts (ECF no. 57-1)

EEOC Letter = DeSantis's April 8, 2013 Letter to the EEOC (ECF no. 57-4)

EEOC Compl. = DeSantis's Complaint to the EEOC (ECF no. 57-4)

Palmese Eval. = Dr. Palmese's Neuropsychological Evaluation (ECF no. 57-7)

Cattan Email = May 29, 2013 Cattan Email to DeSantis (ECF no. 57-9)

Cattan App. = Cattan's Application (ECF no. 61-5).

DeSantis Dep. = DeSantis Deposition (ECF no. 61-2)

interview committee comprised Alan Wohl, Director of Fixed Assets, John Weber, Manager of Third Party Billing, and Jeffrey Klugman, Director of Corporate Recruiting. (NJT Stmt. ¶ 16). DeSantis alleges that Cattan's husband also worked for NJ Transit and was close friends with Alan Wohl. (DeSantis Stmt. ¶ 27). He also claims that Cattan was given the interview questions in advance. (DeSantis Stmt. ¶ 27).

The interview panel chose Fariba Cattan, stating that she was the most qualified for the job and provided the best answers to the interview questions. (DeSantis Stmt. ¶ 16); (Interview Rankings). Cattan had worked as a Principal Accountant in the Cost Accounting & Analysis department since January 2007, had a bachelor's and master's degree in accounting, and held an MBA. (Cattan App.). DeSantis did not complete graduate education. (DeSantis Dep. Tr. 8:14–9:12). Cattan had not previously worked in the Fixed Assets department. (DeSantis Stmt. ¶ 10-12); (Cattan App.).

Cattan began working as the Manager of Fixed Assets on February 28, 2013. (Desantis Stmt. ¶ 17). DeSantis was very upset that he was not promoted to this position. (DeSantis Stmt. ¶ 22). DeSantis alleges that he was expected to train her and continue performing the responsibilities of the Manager of Fixed Assets. (DeSantis Stmt. ¶ 18). During one meeting on May 29, 2013, DeSantis questioned Cattan's qualifications for the job. (DeSantis Stmt. ¶ 23); (Cattan Email). Wohl and Cattan met with DeSantis to discuss DeSantis's comments. (DeSantis Stmt. ¶ 23). Cattan also sent DeSantis an email stating that she has "experienced a lack of respect and cooperation from [DeSantis] on several occasions" and that DeSantis was "antagonistic, loud, and uncooperative" during the May 29, 2013 meeting. (Cattan Email).

DeSantis began experiencing more stress at work, which related to being reprimanded. Beginning on July 17, 2013, DeSantis took medical leave because the job-related stress was aggravating his epilepsy. (Palmese Eval.).

**B. Procedural History**

3

On April 8, 2013, DeSantis sent a letter to the EEOC stating that he wanted to file employment discrimination charges on the basis of age and disability. (EEOC Letter). On July 13, 2013, he filed charges with the EEOC on those same grounds. (EEOC Compl.). The EEOC issued a right-to-sue letter on March 6, 2014.

On June 3, 2014, DeSantis brought suit in this Court against NJ Transit and two NJ Transit employees: Alan Wohl, the Director of Fixed Assets, and Fred D'Ascoli, NJ Transit's Deputy Chief Financial Officer. (Compl.). The complaint asserted five counts: The First Count alleged that defendants violated the ADEA. The Second Count alleged that defendants violated the ADA. The Third Count alleged harassment and a hostile work environment under the NJLAD. The Fourth Count alleged racial discrimination (stemming from DeSantis's marriage to an African-American woman) in violation of Title VII and the NJLAD. Finally, the Fifth Count alleged First Amendment violations stemming from Cattan's disciplining DeSantis for alleged insubordination.

The defendants moved to dismiss the complaint on June 22, 2014. On April 29, 2015, I dismissed the Third and Fifth Counts, as well as the claims against the individual defendants, Alan Wohl and Fred D'Ascoli. *DeSantis v. New Jersey Transit*, 103 F. Supp. 3d 583 (D.N.J. 2015). DeSantis filed an amended complaint on May 20, 2015. The amended complaint asserts the following claims:

- Count I: Age discrimination in violation of the ADEA and NJLAD
- Count II: Disability discrimination in violation of the ADA and NJLAD
- Count III: Harassment and a hostile work environment under NJLAD
- Count IV: Associational race discrimination under Title VII and NJLAD
- Count V: Race discrimination in violation of Title VII and NJLAD
- Count VI: Aiding and abetting in violation of the NJLAD

(AC). The claims of the amended complaint are asserted against all three defendants: NJ Transit, Alan Wohl, and Fred D'Ascoli. (AC). DeSantis

acknowledges, however, that Alan Wohl and Fred D'Ascoli do not have liability as individuals under Title VII, the ADA, or the ADEA; they can have liability only under NJLAD for "aiding and abetting." (Pl. Br. 14). *See also DeSantis*, 103 F. Supp. 3d at 589-90 (discussing individual liability under Title VII, the ADA, the ADEA, and the NJLAD).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir.

5

2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992).

The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). That "evidentiary burden" is discussed in the following section.

### III. DISCUSSION

I find that DeSantis has not presented evidence sufficient to support a jury finding in his favor. The defendants' motion for summary judgment will therefore be granted.

#### A. *McDonnell Douglas* Burden-Shifting Framework

DeSantis argues that New Jersey Transit discriminatorily failed to promote him based on age, disability, and race. NJ Transit's actions, he alleges, violated the ADA, ADEA, NJLAD, and Title VII. Because he lacks substantial direct evidence of discriminatory intent (such as statements of bias), he seeks to prove NJ Transit's discriminatory intent through circumstantial evidence.

6

When an employee seeks to prove an employer's discriminatory intent in an adverse employment action through circumstantial evidence, courts evaluate motions for summary judgment under the specialized burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2] The *McDonnell Douglas* test was formulated "to compensate for the fact that direct evidence of intentional discrimination is hard to come by." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 271 (1989) (O'Connor, J., concurring). This framework is used in Title VII cases, *id.* (majority opinion), ADA cases, *Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003), ADEA cases, *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009),[3] and NJLAD cases, *Bergen Commercial Bank v. Sisler*, 723 A.2d 944, 954 (N.J. 1999).[4]

The *McDonnell Douglas* analysis is divided into three phases, shuttling the burden between the plaintiff and the defendant.

### 1. Step One: The Prima Facie Case

---

[2] Where plaintiff proffers direct evidence, the standard is slightly different: "[T]he quality of evidence required to survive a motion for summary judgment is that which if believed, proves [the] existence of [a] fact in issue *without inference or presumption*." *Bergen Commercial Bank v. Sisler*, 723 A.2d 944, 954 (N.J. 1999) (internal quotations omitted); *see also Kirschling v. Atl. City Bd. of Educ.*, 10 F. Supp. 3d 587 (D.N.J. 2014) (drawing this distinction); *Pray v. New Jersey Transit*, 2014 WL 684592, at *10 (N.J. Super. Ct. App. Div. Feb. 24, 2014) (same).

[3] Although the Supreme Court "has not squarely addressed whether the *McDonnell Douglas* framework ... also applies to ADEA actions," it has consistently applied the framework when parties do not dispute the issue. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141-42 (2000). *See, e.g., Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 n.2 (2009); *Smith v. City of Jackson*, 544 U.S. 228, 252 (2005); *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996). At any rate, I am bound by the holdings of the Third Circuit, which applies the *McDonnell Douglas* burden-shifting framework to ADEA cases. *See, e.g., Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009); *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004).

[4] New Jersey courts follow the *McDonnell Douglas* framework used with federal anti-discrimination statutes when applying the NJLAD. *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1213 (3d Cir. 1995); *Grigoletti v. Ortho Pharm. Corp.*, 570 A.2d 903, 906-07 (N.J. 1990). I will thus analyze NJLAD claims alongside the federal claims.

7

At the outset, a plaintiff must state a prima facie case of discrimination. *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). The prima facie case differs based on the form of discrimination alleged.

### 2. Step Two: Legitimate Non-Discriminatory Reason

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant, who must articulate a legitimate basis for the adverse employment action. *Burton*, 707 F.3d at 426; *Rodriguez v. Nat'l R.R. Passenger Corp.*, 532 F. App'x 152, 153 (3d Cir. 2013). "This burden is relatively light and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Burton*, 707 F.3d at 426 (internal quotations omitted). Indeed, at this stage, "the defendant need not prove that the articulated reason actually motivated its conduct." *Id.* (internal quotations omitted).

### 3. Step Three: Pretext

Once the defendant has offered a non-discriminatory reason, the burden of production shifts back to the plaintiff. Now the plaintiff must present evidence to show that the defendant's stated reason is merely pretext for discrimination. *Id.* The plaintiff can do that in either of two ways: (1) he can discredit defendant's proffered reason; or (2) he can offer evidence that discrimination was more likely than not a motivating or determinative factor in the adverse action. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). To meet that burden, the plaintiff may rely on direct or circumstantial evidence.

If the plaintiff relies on the first method (discrediting the defendant's proffered reasons), he faces a demanding standard: he must present evidence that allows a factfinder "reasonably to infer that *each* of the employer's proffered non-discriminatory reasons ... was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Id.* (internal quotations and citations omitted). The plaintiff "must show such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons

8

for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Iadimarco v. Runyon*, 190 F.3d 151, 166 (3d Cir. 1999) (internal quotations omitted).

If the plaintiff relies on the second method (evidence that discrimination was a motivating factor), he can provide the required evidence in at least three ways: "by showing that the employer in the past had subjected him to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not of his protected class more favorably, or that the employer has discriminated against other members of his protected class or other protected categories of persons." *Fuentes*, 32 F.3d at 765.[5]

DeSantis alleges that NJ Transit's failure to promote was based on age, disability, and race discrimination. I will address each of his claims in turn.

### B. Age Discrimination Claim

In Count I, DeSantis claims that NJ Transit violated the ADEA and the NJLAD by failing to promote him because of his age. As stated above, this claim will be evaluated in terms of the *McDonnell Douglas* burden-shifting framework: First, DeSantis must establish a prima facie case of age discrimination. If he does this, the burden shifts to NJ Transit to articulate a legitimate basis for the failure to promote. If NJ Transit satisfies its burden, then DeSantis must present evidence to show that the defendants' stated reason is merely pretext for age discrimination.

#### 1. Step One

DeSantis does not establish a prima facie case of age discrimination. To show a prima facie case of failure to promote based on age discrimination, a

---

[5] A different approach applies where a plaintiff contends that an adverse employment decision was made for both legitimate and discriminatory reasons. In such a "mixed-motive" case, the issue "is not whether discrimination played the dispositive role but merely whether it played 'a motivating part' in an employment decision." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). This is not alleged to be a mixed-motive case.

9

plaintiff must show (1) he was a member of the protected class (*i.e.*, he was over 40); (2) he was qualified for the position; (3) he suffered an adverse employment decision (*i.e.*, he was passed over for the desired promotion); and (4) his employer's refusal to promote him occurred under circumstances that give rise to an inference of age discrimination. *McClement v. Port Auth. Trans-Hudson*, 505 F. App'x 158, 162 (3d Cir. 2012) (citing *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 300-01 (3d Cir. 2004)). Regarding the fourth element, a plaintiff ordinarily must show that the person promoted or hired instead "was sufficiently younger to support an inference of discriminatory animus." *Smith v. City of Allentown*, 589 F.3d 684, 689-90 (3d Cir. 2009) (citing *Potence*, 357 F.3d at 370).[6]

DeSantis satisfies the first three elements. He was a member of the protected class under the ADEA (*i.e.*, he was over 40), he was presumptively qualified for the position (NJ Transit asked him to interview for it (NJ Transit Stmt. ¶ 14)),[7] and he was turned down for a promotion. However, DeSantis does not satisfy the fourth element. Cattan, who was 54 years old, was hired instead of DeSantis, who was 60 years old. With a mere six-year age difference, Cattan is not so "significantly younger" as to support an inference of discriminatory animus. Moreover, DeSantis does not provide any other context to suggest that age discrimination played a role in the failure to promote. He could not identify a single instance of when anyone spoke to him inappropriately about his age. (DeSantis Dep. Tr. 172:22-25). Two people who

---

[6] Notably, "nothing in the ADEA requires that an age-discrimination plaintiff prove that he was replaced by someone under the age of 40." *Pivorotto v. Innovative Sys., Inc.*, 191 F.3d 344, 357 (3d Cir. 1999).

[7] NJ Transit expressed a preference for applicants with a master's degree. However, at the first step of the *McDonnell Douglas* framework, a plaintiff's "satisfactory performance of duties, leading to promotion" generally will "establish a plaintiff's qualification for a job." *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 268 (3d Cir. 2005). When a defendant's arguments regarding the plaintiff's qualifications is intertwined with its asserted legitimate reason for the employment action, courts should be careful not to "collapse the entire *McDonnell Douglas* analysis into th[e] first step." *Dorsey v. Pittsburg Assocs.*, 90 F. App'x 636, 639 (3d Cir. 2004).

were younger than DeSantis or Cattan applied for the job and were not promoted.

### 2. Step Two

Even if DeSantis could set forth a prima facie claim of age discrimination, I would find that NJ Transit has satisfied its burden at the second step of the *McDonnell Douglas* framework by articulating a legitimate basis for failure to promote. When an employer selects a candidate with greater qualifications, it demonstrates a legitimate, non-discriminatory motive for its action. *See Taylor v. Cherry Hill Bd. of Educ.*, 85 F. App'x 836, 839-41 (3d Cir. 2004). In this case, DeSantis was not promoted because there was a more qualified candidate. NJ Transit conducted a panel interview for each candidate. (Interview Rankings). The interview panel found that Cattan gave superior answers to their questions. (*Id.*). After the interviews, they selected the candidate (Cattan) with a master's degree in accounting and an MBA over a candidate (DeSantis) who did not have any post-undergraduate education. This was not a *post hoc* justification; NJ Transit had stated in advance that post-graduate qualifications were preferred for the position. (DeSantis Dep. Tr. 8:14–9:12).

### 3. Step Three

Furthermore, even if DeSantis's age discrimination claim survived the first two steps of *McDonnell Douglas*, I would find that DeSantis has presented no evidence that the defendant's stated reason was a mere pretext for age discrimination. DeSantis claims that NJ Transit's justifications—*i.e.*, Cattan's advanced degrees and her understanding of the department—were pretextual. (Pl. Br. 22).

At step three, a plaintiff must show that the employer's stated reason for the action was pretext for discrimination. He can do so by (1) discrediting the proffered reason with evidence that shows "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that would permit a reasonable factfinder to rationally infer that the employer did not act for the

11

asserted non-discriminatory reasons, *Iadimarco*, 190 F.3d at 166; or (2) providing direct evidence of past discriminatory treatment, preferential treatment of persons not of his protected category, or discriminatory treatment toward persons of protected categories. *Fuentes*, 32 F.3d at 764-65. The employee has the burden of "casting doubt on an employer's articulated reasons for an employment decision." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 527 (3d Cir. 1992).

DeSantis does not provide evidence that NJ Transit's stated reasons for hiring Catan were a pretext for discrimination. First, he emphasizes that post-graduate education was "preferred," not "required," by NJ Transit. (Pl. Br. 22). This is true, there is nothing implausible about the claim that Cattan's "preferred" status as the holder of a post-graduate degree won her the position. Second, DeSantis argues that Cattan could not have an understanding of Fixed Assets because she had never worked in the department. (*Id.*). This argument falls flat. Cattan had advanced degrees in accounting and business, worked in the Cost Accounting & Analysis department of the same organization, and held the same position (Principal Accountant) as plaintiff (albeit in a different department). She could certainly understand the function of the Fixed Assets department and sufficiently prepare to interview for this position.[8] Surely the employer *could* have chosen to weigh these considerations differently, but there is nothing impermissible or implausible about the way it *did* weight them. DeSantis does not provide sufficient evidence or arguments to discredit NJ Transit's proffered reasons.

Ultimately, "[w]ithout proof that a similarly qualified candidate was treated more favorably," "discriminatory statements ... or ... evidence of discriminatory motives," "[plaintiff] is left only with his subjective belief that [a protected category] played a role in [defendants'] decision not to promote him."

---

[8] DeSantis's argument relies on his assertion that Cattan had been promoted from the Auditing Department in a non-supervisory position. (DeSantis Stmt. ¶ 10). However, Cattan was promoted from the position of Principal Accountant in the Cost Accounting & Analysis department. (Cattan App.).

*Rodriguez v. Nat'l R.R. Passenger Co.*, 532 F. App'x 152, 153 (3d Cir. 2013). DeSantis is unable to meet the burden of casting doubt on New Jersey Transit's proffered reasons for hiring Cattan instead of him. Therefore, summary judgment will be granted for the defendant on Count I.

### C. Disability Discrimination

In Count II, DeSantis claims that NJ Transit violated the ADA and the NJLAD by failing to promote him because of his disability. As with the age discrimination claim, the *McDonnell Douglas* framework applies.

#### 1. Step One

To establish a prima facie case of disability discrimination, a plaintiff must show that (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) has suffered an otherwise adverse employment decision as a result of discrimination. *Taylor v. Phoenixville Sch. Dis.*, 184 F.3d 296, 306 (3d Cir. 1999). Again, DeSantis satisfies the first two elements of a prima facie case. He fails, however, to establish the third: that the failure to promote occurred as a result of disability discrimination. DeSantis admits that none of his coworkers ever spoke to him inappropriately about his disability. (DeSantis Dep. Tr. 172:17-21). DeSantis does not provide facts that suggest that NJ Transit discriminated on this basis. He merely shows that others knew about his disability.

#### 2. Steps Two and Three

Even if DeSantis could satisfy the first step of the *McDonnell Douglas* framework, I would find that NJ Transit has articulated a legitimate non-discriminatory reason for hiring Cattan instead of DeSantis. Cattan possessed greater qualifications and performed better on the interview. Furthermore, as discussed in subsections III.B.2–3, *supra*, DeSantis does not provide sufficient evidence or arguments to discredit NJ Transit's proffered reasons. Therefore, defendants' motion for summary judgment will be granted for Count II.

### D. Race Discrimination by Association[9]

In Count IV, DeSantis claims that NJ Transit failed to promote him because he is a white man married to an African-American woman. He claims that NJ Transit thus violated Title VII and NJLAD. The *McDonnell Douglas* burden-shifting framework also applies to this claim.

#### 1. Step One

To establish a prima facie case of race discrimination, a plaintiff must show that (1) he belongs to a protected class or is in a close relationship with a member of a protected class; (2) he was qualified for the position sought; (3) he was denied promotion, reappointment, or tenure; and (4) "the adverse employment action was made under circumstances that give rise to an inference of unlawful discrimination." *Rodriguez v. Nat'l R.R. Passenger Co.*, 532 F. App'x 152, 153 (3d Cir. 2013).

DeSantis satisfies the first three elements of the prima facie case. His wife is African-American, he was qualified for the position he sought, and he was not promoted. The fourth element, however, is not satisfied, because the failure to promote did not occur under circumstances that give rise to an inference of discrimination. A candidate with post-graduate education was hired for a position where post-graduate education was preferred; a candidate without post-graduate education was not promoted. DeSantis presents no evidence of discriminatory or derogatory statements at NJ Transit, whether directed toward him, his wife, or African-American employees. He does not present other evidence of discriminatory motivations to support his

---

[9] NJ Transit moves to dismiss DeSantis's race discrimination claim for failure to exhaust EEOC remedies. When DeSantis filed with the EEOC, he claimed age and disability discrimination; he did not allege race discrimination. *DeSantis*, 103 F. Supp. 3d at 591-93; (EEOC Compl.). I declined to dismiss this claim for failure to exhaust administrative remedies at the motion to dismiss stage, *id.*, and I will address the merits of these allegations here.

14

allegations.[10] DeSantis has thus fails to establish a prima facie case of race discrimination.

### 2. Steps Two and Three

Even if DeSantis had satisfied the first step of the *McDonnell Douglas* framework, as discussed in subsections III.B.2–3, *supra*, NJ Transit has articulated a non-discriminatory reason for its action and DeSantis does not provide sufficient evidence or arguments to discredit NJ Transit's proffered reasons. DeSantis would not be to meet his burden in the second and third steps of the framework. Therefore, summary judgment is granted for the defendants on Count IV.

### E. Race Discrimination Against Others

Count IV alleges Title VII and NJLAD violations based on DeSantis's association with his wife, who is African-American. (AC ¶ 129-38). Count V asserts Title VII and NJLAD violations based on an alleged failure to promote his wife and other African-Americans. (AC ¶ 139-50).

DeSantis of course does not have standing to bring claims *on behalf of* his wife and other African-American employees of NJ Transit. If such individuals experienced discrimination, they must bring those claims themselves. But Title VII permits individuals to sue on their own behalf so long

---

[10] In the amended complaint, DeSantis asserts that his wife, who was employed by NJ Transit, and other African-American employees were also not promoted. (AC ¶¶ 129-50).

First, these pleadings do not serve as evidence of discrimination. "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001). A plaintiff must provide evidence at the summary judgment stage and pleadings alone are not satisfactory.

Second, DeSantis stated in his deposition testimony that his wife never filed a complaint about racial discrimination at NJ Transit. (DeSantis Dep. Tr. 15:2-11). That is not a prerequisite for consideration, but DeSantis also fails to present any other evidence that his wife or other African-Americans were discriminated against at NJ Transit.

as they are in the "zone of interests protected by Title VII." *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011).

The claim based on DeSantis's being married to an African-American woman is at least of this type. For example, in *Thompson*, an employee who was fired because his fiancée filed an EEOC claim had standing under Title VII because he was in "the zone of interests protected by Title VII." *Id. Thompson* allowed an individual to sue based on his wife's discrimination claims where he experienced an adverse employment action because of his wife's complaint. *Id.* "Hurting him was the unlawful act by which the employer punished her." *Id.* In those circumstances, the employee was "within the zone of interests" Congress intended to protect. *Id.* The evidence bringing DeSantis within that zone of interests, however—for example, evidence that the employer was motivated by his wife's race when it failed to promote DeSantis—is lacking.

Any grievances of co-workers even more clearly fail to give rise to standing on the part of DeSantis. A non-black plaintiff does not have standing to pursue a Title VII claim on behalf of black coworkers when there is no apparent connection between the non-black plaintiff's harm and the discrimination against the black employees. *See Jackson v. Deen*, 959 F. Supp. 2d 1346 (S.D. Ga. 2013). In *Jackson v. Deen*, for example, a non-black employee alleged several specific instances of anti-black discrimination. *Id.* at 1349-50. For example, black employees were prohibited from using the front entrance to the restaurant, using customer bathrooms, or working as hostesses. *Id.* The employee claimed she was "personally offended" by the racist environment, which caused her "immense personal and work related emotional and physical distress." *Id.* at 1350. However, the employee could not sue her employer for racial discrimination because her interests were "unrelated to the statutory prohibitions in Title VII." *Id.* at 1354. The alleged discrimination was not directed at her and was not meant to harass her. *Id.*

Here, DeSantis neither presents evidence of discrimination against his wife nor argues that he is in the "zone of interests" protected by Title VII. First,

although the amended complaint states that his wife was not promoted, he does not present any evidence to support this claim. Pleadings alone "are insufficient to repel summary judgment." *Schoch*, 912 F.2d at 657; *see also Gleason*, 243 F.3d at 138. Second, DeSantis does not prove that he was in the "zone of interests" protected by the anti-discrimination statute for purposes of this Count. He does not, for instance, provide evidence that he was punished because of racist attitudes toward his wife or, *a fortiori*, his coworkers. Thus, DeSantis's Count V claim fails and defendants' motion for summary judgment is granted.

### F. Harassment and Hostile Work Environment

In Count III, DeSantis asserts a claim of hostile work environment in violation of the NJLAD. To establish a prima facie case, the plaintiff must show that the defendant's conduct (1) would not have occurred but for the employee's protected category, (2) the conduct was severe or pervasive enough to make (3) a reasonable person of that protected category believe that (4) the conditions of employment are altered and the working environment is hostile or abusive. *Taylor v. Metzger*, 706 A.2d 685, 688-89 (N.J. 1998) (citing *Lehmann v. Toys 'R' Us, Inc.*, 626 A.2d 445, 453-54 (N.J. 1993)).

Here, again, DeSantis has not provided evidence that he experienced a hostile work environment based on a protected category. Altogether, from 1982 to 2013, DeSantis states that he worked longer hours to perform other people's work, was passed over for the Manager of Fixed Assets position, was told once by his supervisor that "shit rolls down the hill and you are going to always be at the bottom," and was reprimanded for demanding to know why his supervisor (occupying the position he applied for) was qualified. (Pl. Br. 28).

This does not rise to the level of a hostile environment for two reasons: First, it does not meet the "severe and pervasive" standard. To be "severe or pervasive," harassment must change the conditions of employment or alter the working environment. *Metzger*, 706 A.2d at 688-89; *see also Shepherd v.*

17

*Hunterdon Dev. Ctr.*, 803 A.2d 611, 626 (N.J. 2002). For instance, a patently racist slur spoken publicly by a supervisor to subordinate may be sufficiently severe. *Metzger*, 706 A.2d at 685. Comments about a plaintiff's disability uttered by a supervisor may be severe and pervasive. *Leonard v. Metro. Life Ins. Co.*, 723 A.2d 1007 (N.J. Super. Ct. App. Div. 1999). A supervisor repeatedly saying "you're a woman and a pain in my ass" and "you're so emotional, it must be PMS time" may qualify as severe. *Woods-Pirozzi v. Nabisco Foods*, 675 A.2d 684, 681, 689 (N.J. Super. Cit. App. Div. 1996). DeSantis does not provide evidence that any such derogatory comments were made to him; in fact, he admits that no one many any comments to him about his age or disability. (DeSantis Dep. Tr. 172:17-25). The "downhill" comment was surely crude and denigrating, but also isolated and non-discriminatory in content. DeSantis does state that he experienced significant stress after being reprimanded for questioning his supervisor's qualifications. That, however, does not announce itself as harassing behavior; it is normal in the workplace to reprimand an employee for such a comment. Moreover, it was context-specific; a reasonable employee would not consider this "severe and pervasive."

Second, even if this were "severe and pervasive" harassment, I would find that DeSantis has not demonstrated that the conduct would not have occurred but for his membership in a protected category. He was not subject to any derogatory or negative comments about his race, his wife's race, his age, or his disability. While his supervisor's single comment may have been inappropriate, NJLAD is not a code of civility. "[N]either rudeness nor lack of sensitivity alone constitutes harassment, and simple teasing, offhand comments, and isolated incidents do not constitute discriminatory changes in the terms and conditions of one's employment." *Shepherd*, 803 A.2d at 626.

Therefore, since there are no disputes of material fact and there is not sufficient evidence to suggest that DeSantis experienced a hostile workplace environment, summary judgment is granted on Count III.

## G. Aiding and Abetting in Violation of the NJLAD

In Count VI, DeSantis seeks to hold Alan Wohl and Fred D'Ascoli individually liable for the alleged discrimination. DeSantis acknowledges that individuals do not have liability under Title VII, the ADA, or the ADEA. (Pl. Br. 14). However, individuals can be held liable under the NJLAD for "aiding and abetting" discrimination. *See DeSantis v. New Jersey Transit*, 103 F. Supp. 3d 583, 589-90 (D.N.J. 2015) (comparing individual liability under Title VII, the ADA, the ADEA, and the NJLAD).

To hold an employee liable as an aider and abettor, Plaintiff must show: (1) the employer whom the defendant aided performed a wrongful act causing an injury; (2) the defendant was generally aware of his role as part of an overall illegal or tortious activity at the time that he provided the assistance; and (3) the defendant knowingly and substantially assisted the principal violation. *Cicchetti v. Morris Cty. Sheriff's Office*, 947 A.2d 626, 645 (N.J. 2008) (citing *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir.1999)). Aiding and abetting "require[s] active and purposeful conduct." *Id.* (citing *Tarr v. Ciasulli*, 853 A.2d 921, 928-29 (N.J. 2004)).

Ultimately, Wohl and D'Ascoli cannot be held individually liable for aiding and abetting NJ Transit's discrimination because NJ Transit itself is not liable. A defendant cannot assist in or abet a principal violation unless there is a principal violation. Moreover, DeSantis presents no evidence of element (3), *i.e.*, that Wohl or D'Ascoli engaged in active or purposeful conduct to further discrimination. NJ Transit's motion for summary judgment is therefore granted on Count VI.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted, and judgment is granted for defendants on all Counts. An appropriate order follows.

Dated: November 2, 2017

_____
HON. KEVIN MCNULTY, U.S.D.J.